## Erie County Mortician Society v. Holden, etc.

*David S. Gifford*, for complainant.

*S. Y. Rossiter*, for appellant.

WICKERSHAM, J., April 13, 1938.—This case comes before us on the appeal of defendant from the decision of the State Board of Undertakers revoking his license.

It appears from the record that plaintiff filed a complaint with the State Board of Undertakers charging defendant with violating paragraph (*e*) of section 8 of the

Act of June 10, 1931, P. L. 485, as amended by the Act of July 19, 1935, P. L. 1324, which provides:

"The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee for the following reasons . . .

"(e) Gross incompetency, negligence or misconduct in the carrying on of such business or profession."

A hearing was had before said board and testimony was taken from which it reached its findings of facts and conclusion of law, and an order was made on August 18, 1937, revoking the license of said defendant, from which order this appeal was taken.

It appears from testimony on the part of plaintiff that its investigation of this case was caused by the haste displayed by defendant in his efforts to have the casket containing the body of a deceased person lowered into its grave, when the officers in charge at the soldiers' cemetery where this burial was taking place insisted that the casket be opened.

A further examination of the testimony discloses that Henry C. Wilson, a former soldier, died as the result of a fall or beating which caused severe injuries to his face and head. A post-mortem was performed upon the body at a hospital after which the scalp, abdomen, and breast were stitched together by the pathologist with black thread, as is the custom. The body of the deceased was entrusted to defendant for burial and removed to his funeral home on April 2, 1937, but he did no embalming or preparatory work of any sort until the next morning. Before making any burial preparations on the body of the deceased, defendant first investigated the amount of burial allowance he would receive from the county for the burial of this ex-soldier. In the preparation of the body for burial the only steps taken by defendant were to inject formaldehyde solution into the abdomen, wash and dress the body, defendant admitting that this was all

he ever did in the way of preparing a body for burial unless he had specific instructions to do more.

Witnesses for plaintiff testified that it is customary, upon receiving a body upon which a post-mortem has been performed, to remove the pathologist's stitching, embalm the head, limbs and trunk, and re-stitch the pathologist's incisions with white linen thread, using invisible stitches; that it is the practice to conceal and cover over all such incisions, as well as any bruises or marks, with cosmetics, paints, and wax; that an examination of the body at the cemetery, when it was ready for burial, showed little or no embalming, the mouth was open about three-quarters of an inch, a noticeable growth of beard was present, bruises and black and blue marks were plainly visible on the head and face; that no effort had been made to conceal the post-mortem stitching; and that everything could have been corrected if even ordinary embalming and care had been taken.

Also a part of the record in this case is defendant's application to the County Commissioners of Erie County for the State burial aid of $75 which he received on April 5th. In this application, which was sworn to before a notary public, defendant stated he had embalmed the body of the deceased, that he buried the body on April 5th, whereas he had done neither. It appears from his own testimony that the only step in the nature of embalming which he did was to inject a formaldehyde solution in the abdomen; and he did not bury the body until April 6th, the day after he had received his burial allowance. In said application it also appears that defendant stated $125 was the cost of the casket he used for the deceased, whereas in his testimony he admits the cost thereof was $24. This shows a manifest intention on the part of defendant to cheat and defraud the County Commissioners of Erie County.

We think the testimony offered at the hearing before the State Board of Undertakers definitely proves defend-

ant guilty of gross incompetence, negligence, and misconduct in the carrying on of the business or profession of undertaker, and, as we have stated, an evident intent to cheat and defraud the said county commissioners. We are of opinion, therefore, that the order of said board was justified and is sustained by the evidence.

We think, however, that finding of fact no. 3 of the board should be stricken out as it has been agreed by the parties hereto that this defendant was not entitled to and did not receive from the Veterans Bureau the sum of $100 toward the burial expenses of the aforementioned decedent. We approve the other findings, conclusion, and order of the board; and think that the exclusion of finding no. 3 does not alter in any way said board's conclusion of law and final order.

And now, April 13, 1938, the order of the State Board of Undertakers revoking the license of William L. Holden, defendant, is approved and affirmed, and defendant's appeal is dismissed at his cost.